788 P.2d 62

**In re the Marriage of Clora Jacqueline RAY, Petitioner/Appellant,**

v.

**John William MANGUM, Respondent/Appellee.**

**No. CV–89–0273–PR.**

Supreme Court of Arizona, In Banc.

Dec. 29, 1989.

Riley, Hoggatt & Suagee, P.C. by Richard J. Riley, Sierra Vista, for petitioner/appellant.

William H. Callaway, Tucson, for respondent/appellee.

CAMERON, Justice.

### I. JURISDICTION

Clora Jacqueline Ray ("Ray") (formerly Clora Jacqueline Mangum), seeks review of a court of appeals' memorandum decision that denied her request for child support arrearages in the amount of $21,950.00. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### II. ISSUES

A. Was there clear and compelling evidence to support a finding that Ray had waived her claim to past due child support?

B. Did the fact that the parties signed an agreement to increase child support estop Ray from claiming child support arrearages?

### III. FACTS

On 31 May 1977, petitioner Ray and respondent John William Mangum ("Mangum") were divorced in Cochise County, Arizona. The court ordered Mangum to pay $200.00 per month in child support for the two children. Payments were to be made to the clerk of the court.

Ray subsequently remarried and moved to Texas. In December, 1978, Mangum initiated proceedings in Texas to enforce his visitation rights. A decree was entered on 13 November 1979, granting Mangum reasonable visitation rights and ordering him to pay $200.00 per month in child support as well as provide medical insurance for the children. Again, support payments

were to be made through the clerk of the court.

On 27 February 1987, Ray filed a motion in Texas to modify the 1979 order for child support. After the Texas motion was filed, Ray and Mangum met in Willcox, Arizona, to discuss the matter. Their daughter, Katie Mangum, was also present at the Willcox meeting. As a result of this meeting, the parties entered into a written agreement that was filed in Parker County, Texas on 18 March 1987. Ray's motion to modify the 1979 order for child support was thereafter dismissed without prejudice. The agreement, which was prepared by Mangum, provided in pertinent part:

> That the father, John William Mangum, will pay a total sum of $450.00 per month as child support. This will begin in April 1987.
>
> The child support will be paid $225.00 per child. Payments will be made until each child reaches eighteen years of age. It is further agreed that the check will be made payable to Ralph Heath and Katie Tracey Mangum. The children's mother has stated that the check will then be put into a checking account for the children, which checking account will be under the supervision of Clora Jacqueline Ray.
>
> As John W. Mangum is an independent Consultant, support will be sent as he receives monthly funds.

There was no reference in the agreement to past due child support. Mangum complied with the terms of the agreement.

On 2 February 1988, Ray filed a petition for order to show cause in Arizona demanding, among other things, $21,950.00 in child support arrearages. The trial court denied Ray's request for past due child support, holding as follows:

> After the agreement of the parties was executed Respondent reasonably believed that all past disputes were over and Respondent then disposed of his cancelled checks which evidenced the amounts of support provided by Respondent since the Arizona Decree was entered. Respondent is therefore unable to support his contention that he has paid the amount of money he claims.
>
> * * * * * *
>
> Having considered all the evidence presented during the hearings in this matter together with the arguments of counsel, the Court concludes that the Petitioner has effectively waived any claim she may have had prior to March, 1987 for unpaid child support. The Respondent reasonably believed that all disputes as to past child support had been resolved, and in reliance upon that belief Respondent has been prejudiced in that he has discarded the evidence which would support his claim for credit as to amounts he has paid in the past.

(Order entered in the Superior Court of Cochise County on 5 August 1988).

Ray appealed and the court of appeals affirmed. The court of appeals agreed with the trial court's finding of waiver and/or estoppel and stated:

> On appeal appellant argues that she has not waived child support arrearages because appellee admitted that he had not paid all of the past support. Therefore, she argues, he cannot assert a waiver or estoppel defense due to his inability to produce past records. Appellant misunderstands the trial court's ruling. The number of past payments made is not the issue. The issue is that pursuant to the March 1987 agreement appellee destroyed whatever records he had. We agree with the trial court that appellee reasonably believed that as of the date of the agreement past disputes were resolved. By signing the agreement appellant waived the collection of any arrearages. *Cf. Cordova v. Lucero,* 129 Ariz. 184, 629 P.2d 1020 (App.1981). We have closely scrutinized the facts and have determined that the agreement is clear and compelling evidence that the arrearages were waived. *Cordova v. Lucero,* supra.

*Ray v. Mangum,* No. 2 CA–CV 88–0324, Memo. Decision at 3 (Ariz.Ct.App. May 25, 1989).

332

## IV. DISCUSSION

### A. *Waiver of Child Support Arrearages*

 Support payments may not be retroactively modified by a court nor by the divorced parents. *See Lamb v. Superior Court,* 127 Ariz. 400, 402, 621 P.2d 906, 908 (1980); *Hatch v. Hatch,* 113 Ariz. 130, 134, 547 P.2d 1044, 1048 (1976); *Cordova v. Lucero,* 129 Ariz. 184, 185, 629 P.2d 1020, 1021 (App.1981). In certain fact situations, however, a custodial parent can waive the collection of child support arrearages. *Cordova,* 129 Ariz. at 185, 629 P.2d at 1021.

 "Waiver" is the voluntary and intentional relinquishment of a known right, express or inferred. *American Continental Life Ins. Co. v. Ranier Const. Co.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). Thus, to effectuate a waiver of child support arrearages, the facts must demonstrate by *"clear and compelling evidence"* the voluntary and intentional abandonment of a known right. *Cordova,* 129 Ariz. at 187, 629 P.2d at 1023 (emphasis supplied).

In *Cordova,* the custodial parent wrote a letter to the children's father advising him that she did not want his support, that she did not want him near the children, and that she was going to have the children adopted by her new husband. No support payments were made after receipt of the letter. In addition, the custodial parent waited three and one-half years without making any further claim to arrearages. The Arizona Court of Appeals held that these facts proved by clear and compelling evidence that the custodial parent had waived her rights to collect child support arrearages. In adopting a strict standard for waiver of child support arrearages, the court of appeals recognized the importance of protecting the welfare of minor children:

> We are mindful of the problems created if trial courts take a liberal approach in granting waivers to prior child support orders. The validity of prior court orders must be maintained and the welfare of the involved minor children must be protected. The facts warranting such a waiver must be closely scrutinized and such waiver should only be determined when there is clear and compelling evidence in support of such finding.

*Cordova,* 129 Ariz. at 187, 629 P.2d at 1023.

 The facts of the case before us are insufficient to support a finding of waiver. Not only was there no evidence whatsoever of an intent by Ray to abandon her claim to child support arrearages, there was evidence indicating that Ray's intentions were just the opposite. Furthermore, the testimony showed that there was no meeting of the minds at the Willcox meeting on the issue of past due child support. Mangum testified that although they did not discuss arrearages at the meeting, he nonetheless believed the agreement to be dispositive of all issues:

Q. [Mr. Callaway—attorney for appellee] Did she [Jacqueline Ray] discuss with you at that time anything about the fact that you were delinquent in child support or arrearages that you owed?

A. [Ray Mangum] No.

Q. And when you made the agreement that both of you signed on March 18, 1987, with respect to increasing the child support, was that agreement made with the intent of filing this agreement—and that has been marked as exhibit 7—did you make the agreement with the intent, both of you, of having this filed in Texas?

A. Yes, sir. I sent it to Texas.

Q. Was it to be dispositive of all issues you had pending at that time?

A. That is the way I understood it.

Jacqueline Ray, on the other hand, testified at trial as follows:

Q. [Mr. Riley—attorney for appellant] Did you have any discussion about the back support at that time?

A. [Clora Jacqueline Ray] I asked John point blank: Are you going to pay the back child support?

And he looked at me and he said: Yes.

He kind of ducked his head and said yes. And I said: John, don't tell me. Tell your daughter sitting right here what you are going to do about child support.

And he told her yes.

Katie Mangum corroborated her mother's testimony as to what occurred at the Willcox meeting:

Q. [Mr. Riley] Was there any discussion about back child support at that meeting?

A. [Katie Mangum] Yes, sir.

Q. What do you remember?

A. I remember that my mama asked my daddy about that child support, and he said he would pay it. And my mama told him not to tell her, to tell me. He did.

The court of appeals agreed with the trial court's finding that Mangum's "reasonable belief" controlled whether or not child support arrearages were waived:

Furthermore, the court found that appellant destroyed his records of past support payments in reliance on the March 1987 agreement and therefore could assert the defense of waiver or estoppel.

*Ray*, at 3.

We disagree with this finding. The fact that Mangum believed there was a waiver and destroyed his records in reliance on this assumption is not clear and compelling evidence of a waiver by Ray. Where conflicting testimony exists and the parties' unspoken assumptions and intentions conflict, one party's belief cannot provide clear and convincing evidence of the parties agreement. Much more is needed to meet the waiver clear and compelling evidence standard, such as a waiver in writing (*Cordova, supra*), or an admission by the custodial parent of an intent to waive child support arrearages. *See e.g., In re Szamocki's Marriage*, 47 Cal.App.3d 812, 121 Cal.Rptr. 231 (1975) (former wife waived claim to back child support where all the facts indicated that she wanted no further contact with her ex-husband nor any further support payments from him); *Kaminski v. Kaminski*, 8 Cal.App.3d 563, 87 Cal. Rptr. 453 (1970) (custodial parent waived any claim to collect support arrears when she stated "I don't want anything from you at all" and denied her ex-husband his court granted visitation rights).

In the instant case, the agreement was silent on arrearages and there was no indication by Ray that she waived them. Nor did any other facts indicate a waiver. In fact, unlike the custodial parent in *Cordova, Kaminski*, or *Szamocki*, Ray wanted to continue receiving support payments in the future, and, additionally, to have them increased. Based on Ray's testimony at trial, she believed that her rights to child support arrearages were intact. While this fact alone is not controlling, an agreement to increase child support is certainly not inconsistent with this belief. Nor is such an agreement inconsistent with a claim for past due child support.

We hold that, under the facts of this case, there was not clear and compelling evidence that Ray waived her claim to past due child support.

### B. *The Agreement as an Estoppel*

The court of appeals found that by signing the March 1987 agreement the parties waived the collection of arrearages. However, the agreement itself made no mention of child support arrearages. Nevertheless, the court of appeals believed that Mangum destroyed his records of past child support in reliance on the 1987 agreement, and could therefore assert the defense of estoppel.

The elements necessary to support an equitable estoppel are:

1) conduct by which one induces another to believe in certain material facts; and

2) the inducement results in acts in justifiable reliance thereon; and

3) the resulting acts cause injury.

*Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986) (quoting from *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (1984)).

We believe that entering into an agreement to increase child support from $200.00 a month to $450.00 a month is not conduct that would induce a person to reasonably believe that all past due child support would be forgiven. More importantly, we believe that it is not reasonable to rely on something that was, by Mangum's own admission, never discussed and never reduced

to writing. Mangum, therefore, had no reason to believe that Ray was waiving her right to claim child support arrearages and thus no reason to destroy his past records of child support. Although it may be difficult for Mangum on remand to prove how much child support he paid, the fact that he destroyed his past records does not in itself prove justifiable reliance.

We note, in this regard, that the divorce decree ordered Mangum to make payments through the clerk of the court of Cochise County. Mangum admitted that he made no payments in this manner. The Parker County, Texas court entered a similar order in the proceeding brought by Mangum to enforce his visitation rights. Some checks were sent to the clerk of the Texas court and a record of those payments was maintained. Mangum should, of course, be credited with non-recorded support payments, provided he can prove they were made. If, however, Mangum cannot satisfactorily show that such payments were made, the records of the Cochise and Parker County court clerks should prevail.

We hold that the facts are insufficient to support a finding of estoppel.

Reversed and remanded to determine the amount of child support in arrears.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.