888 P.2d 1370

STATE of Arizona, ex rel., the DEPART-
MENT OF ECONOMIC SECURITY, on
Behalf of Barbara Ellen DODD, Appel-
lant,

v.

Norris Lincoln DODD, Appellee.

No. 1 CA–CV 92–0093.

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 30, 1994.

Review Denied Feb. 22, 1995.

Grant Woods, Atty. Gen. by David N. Horowitz, Child Support Enforcement, Phoenix, for appellant.

Matthew R. Gould, Phoenix, for appellee.

## OPINION

GERBER, Judge.

This appeal presents the issue whether the trial court abused its discretion in determining that Barbara Ellen Dodd (mother) lost her right to claim child support arrearages from appellee Norris Lincoln Dodd (father) through her agreement to accept reduced child support payments and her delay in bringing her claim. Because the record contains insufficient evidence to support waiver, estoppel, or laches defenses, we reverse and remand for a determination of arrearages owed.

## BACKGROUND

The mother and father were divorced on August 11, 1982. In the decree of dissolution, the mother was awarded custody of the couple's two-and-one-half-year-old daughter. The father was ordered to pay $315.00 per month in child support.

In September 1982, the father sought legal advice from the Arizona State University legal clinic in an attempt to have his child support obligation reduced. The father claimed that he was advised that, based on his income, his child support obligation should be between $145.00 and $190.00. The father paid $290.00 per month from September 1982 until November 1983.

In September or October 1983, the parties met and exchanged financial information.[1] Both parties agreed that the father would pay $250.00 per month in child support. The father paid $250.00 per month from November 1983 through December 1989; thereaf-

---

1. There is a conflict in the record as to when this meeting took place. The trial court found that the meeting took place in September or October 1983. The father alleges that the meeting took place in September 1982. The father's payment history, however, indicates that he began making payments of $250.00 per month beginning in November 1983.

ter, he began paying the full $315.00 per month.

In 1984, the father asked the mother to sign a written stipulation reducing his child support obligation to $250.00 per month. The mother refused to sign the stipulation. In December 1984, the mother contacted the Arizona Department of Economic Security, Child Support Enforcement Administration [CSEA], to obtain assistance in enforcing the child support award. She filed a complaint in August 1985, but the matter was dismissed in October 1987 because CSEA had lost contact with her. In December 1989, she requested that the father begin paying the full $315.00 per month awarded in the decree. The father began paying this amount beginning in January 1990.

Although the father admits receiving a copy of a motion to dismiss a petition filed pursuant to the Uniform Reciprocal Enforcement of Support Act in November 1987, he claims that the mother first raised the issue of arrearages with him in February 1991. To pursue the collection of arrearages, the mother again contacted CSEA for assistance. In July 1991, the attorney general's office obtained an *ex parte* order of assignment of the father's wages in the amount of $472.50 per month divided into $315.00 for current support and $157.50 for arrearages.

The father contested the order. He claimed that because of the agreement with the mother, he owed no arrearages and was current on his support obligation. Following a hearing on the matter, the trial court issued an order quashing the assignment. Among its findings, the court stated the following:

> 8. Based on the testimony of the Petitioner that she agreed to accept the $250, and her prior actions accepting the $290, the Court finds that the Petitioner has waived her rights to child support arrearages. Based on *Cordova v. Lucero*, 129 Ariz. 184, 629 P.2d 1020, and *Ray v. Mangum*, 163 Ariz. 329, 788 P.2. [sic] 62, the Court finds that the Petitioner has waived her right to collect child support arrearages.

> 9. The Court further applies the doctrine of equitable estoppel and/or latches [sic] in finding that the Petitioner has abandoned/waived her claim for child support arrearages and that the claim for arrearages is prejudicial to the Respondent. Respondent has taken on new financial obligations in the form of a wife and new baby.

> 10. The Respondent is ordered to make his child support payments of $315 per month. . . .

The state appeals from this order.

## DISCUSSION

### A. *Jurisdiction Over the Appeal*

The father initially argues that this appeal should be dismissed because the state is not an "aggrieved party" and therefore has no right to appeal. *See State v. O'Connor*, 171 Ariz. 19, 24, 827 P.2d 480, 485 (App.1992); *McGough v. Insurance Co. of North America*, 143 Ariz. 26, 29–30, 691 P.2d 738, 741–42 (App.1984); Ariz.R.Civ.App.P. 1. The father claims that the state was not deprived of any personal or property right and only the mother would benefit if he were required to pay the arrearages. We disagree.

Under Arizona law, the state, through the attorney general, has the right to pursue a child support enforcement action whether or not the minor child is supported by government funds. A.R.S. § 12–2456(A). Further, the state filed the order of assignment which the trial court revoked, and this revocation is the subject of the present appeal. We therefore address the merits of this appeal.

### B. *Child Support Arrearages*

The parties agree that under Arizona law parents have no authority to modify a child support order through their agreement, and the court has no authority to modify retroactively a child support award. A.R.S. §§ 12–2453(C), 25–327(A); *Ray v. Mangum*, 163 Ariz. 329, 332, 788 P.2d 62, 65 (1989); *Cordova v. Lucero*, 129 Ariz. 184, 186,

629 P.2d 1020, 1022 (App.1981). The issue before us is whether equitable principles prevent enforcement of the claim for arrearages.

### 1. Waiver

To make his defense that the mother waived her right to claim arrearages, the father must show "by 'clear and compelling evidence' the voluntary and intentional abandonment of a known right." *Ray*, 163 Ariz. at 332, 788 P.2d at 65, *citing Cordova*, 129 Ariz. at 187, 629 P.2d at 1023. In the dissolution decree entered on August 11, 1982, the father was ordered to make child support payments of $315.00 per month. In September or October of 1983, the mother informally agreed to a reduced child support payment of $250.00 per month. She accepted payments of $290.00 per month prior to this agreement. The father began making the full court-ordered support payment of $315.00 per month in January 1990, prior to the filing of the order of assignment. The parties disagree, however, whether the mother agreed in any way to forego the child support arrearages created by the father's reduced payments.

■ Although there is evidence in the record to support the trial court's finding of waiver, that evidence is not clear and compelling. There is no written agreement evidencing the mother's waiver of child support arrearages. The mother testified at the hearing that she agreed to reduced payments merely because she understood the father's financial constraints at the time of the agreement. In *Ray*, the Arizona Supreme Court held that the father's belief that the agreement addressed arrearages was not controlling in the face of conflicting evidence:

> Where conflicting testimony exists and the parties' unspoken assumptions and intentions conflict, one party's belief cannot provide clear and convincing evidence of the parties['] agreement. Much more is needed to meet the waiver clear and compelling evidence standard, such as a waiver in writing, or an admission by the custodial parent of an intent to waive child support arrearages.

163 Ariz. at 333, 788 P.2d at 66 (citation omitted). The evidence here reflects a dispute over those "unspoken assumptions and intentions," which are insufficient to meet the clear and compelling evidence standard for waiver.

■ Even if we were to construe *Ray* to apply only to agreements regarding the waiver of accrued arrearages, we also find no waiver of post-agreement arrearages. Any agreement to reduce the father's child support obligation, made without court authorization, was invalid to waive future arrearages. *Cordova*, 129 Ariz. at 186, 629 P.2d at 1022. The only evidence indicating a post–1983 waiver of arrearages is the father's claim that in 1984 the mother refused to sign a stipulation reducing the child support obligation by stating that "things were working just fine." The mother not only denied making such a statement but also contacted CSEA shortly thereafter to pursue collection of arrearages. Hence, the father's evidence of a post-agreement waiver does not meet the clear and compelling evidence standard.

### 2. Estoppel

■ The trial court also applied the doctrine of equitable estoppel to defeat the claim for arrearages. The elements of estoppel are:

1) conduct by which one induces another to believe in certain material facts; and

2) the inducement results in acts in justifiable reliance thereon; and

3) the resulting acts cause injury.

*Ray*, 163 Ariz. at 333, 788 P.2d at 66.

The threshold issue is the appropriate standard to apply in determining whether the evidence supports equitable estoppel as a bar to the collection of child support arrearages. No Arizona cases have directly addressed this issue. As noted previously, however, a "clear and compelling evidence" standard has been applied in determining whether waiver bars the collection of arrearages. *Ray*, 163 Ariz. at 332, 788 P.2d at 65;

*Cordova,* 129 Ariz. at 187, 629 P.2d at 1023. In adopting this standard for waiver, this court previously reasoned as follows:

We are mindful of the problems created if trial courts take a liberal approach in granting waivers to prior child support orders. The validity of prior court orders must be maintained and the welfare of the involved minor children must be protected. The facts warranting such a waiver should only be determined when there is clear and compelling evidence in support of such finding.

*Cordova,* 129 Ariz. at 187, 629 P.2d at 1023.

■ Whether the defense raised is waiver or estoppel, the overriding concern expressed by the *Cordova* court remains the same: the welfare of minor children. Because the welfare of children is best protected by the application of a clear and compelling standard, we hold that in cases involving child support arrearages, equitable estoppel acts as a bar to recovery only when there is clear and compelling evidence in the record to support such a determination.

■ In *Ray,* our supreme court found no equitable estoppel in the fact that the father could not reasonably believe that his agreement with the mother forgave his child support arrearages where the agreement did not address the issue and its terms were consistent with a claim for arrearages. 163 Ariz. at 333–34, 788 P.2d at 66–67. In the present case, the father's reliance on the 1983 agreement as a waiver of accrued arrearages does not support his estoppel argument because the mother's agreement to a reduction in future payments addresses only the future and hence does not unambiguously waive her claim to past-due amounts.

■ Similarly, we find that the father's belief that the 1983 agreement forgave post-agreement arrearages was not reasonable because the mother never agreed to specific terms, either orally or in writing, addressing future arrearages. The father's assumption that the agreement settled this issue is not sufficient to meet the clear and compelling

standard. Accordingly, we conclude that the record lacks clear and compelling evidence to support equitable estoppel as a bar to the collection of either pre- or post-agreement arrearages.

3. Laches

■ The collection of child support arrearages is not barred by the statute of limitations because the minor child is not yet emancipated. A.R.S. § 12–2453(E); *Rutherford v. Babcock,* 168 Ariz. 404, 406, 814 P.2d 361, 363 (App.1991). The father claims, however, that the mother's delay in making her claim for arrearages bars her claim.

■ We first address the appropriate standard to apply in determining whether the evidence supports laches as a bar to the collection of arrearages. For the same reason discussed previously in the context of equitable estoppel, i.e., our concern for the welfare of minor children, we hold that laches bars the collection of arrearages only upon a finding of clear and compelling evidence.

■ Laches is recognized in Arizona as an equitable defense to a claim for child support arrearages. There has been an evolution in the law of laches. Earlier cases dealing with arrearages hold that in order to make this defense, the father must show either that the mother abandoned her claim or that he was prejudiced by her actions. *Patterson v. Patterson,* 102 Ariz. 410, 415, 432 P.2d 143, 148 (1967); *Baures v. Baures,* 13 Ariz.App. 515, 520, 478 P.2d 130, 135 (1970); *Corbett v. Corbett,* 116 Ariz. 350, 352–53, 569 P.2d 292, 294–95 (App.1977). More recent and more general laches cases require a showing of both unreasonable delay and prejudice. *Mathieu v. Mahoney,* 174 Ariz. 456, 459, 851 P.2d 81, 84 (1993) (claim involving initiative measure's alleged violation of single subject provision); *Flynn v. Rogers,* 172 Ariz. 62, 66, 834 P.2d 148, 152 (1992) (claim involving disposition of military pension benefits in a reopened dissolution decree); *Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 577, 739 P.2d 794, 798

**188**

(1987) (child support reimbursement cross-claim).

■ In light of these recent Arizona Supreme Court cases, we hold that in a child support case the defense of laches requires that the father must show both (1) that the mother unreasonably delayed bringing a claim for arrearages, and (2) that the father was prejudiced by this delay. *See id.*

■ The record in the present case does not show that the mother unreasonably delayed bringing her claim for arrearages. The parties were attempting throughout the time period at issue to resolve the support issue. In 1983, the mother agreed to accept reduced payments because she "felt sorry" for the father because of his financial constraints. In 1984–85, she attempted to recover arrearages through CSEA. In 1989, she requested that the father recommence paying the court-ordered amount. In 1991, she again contacted CSEA. This evidence indicates that the delay in pursuing her claim reflected her belief that the father was financially unable to make full payment and that she only sought arrearages when she learned of the father's improved financial circumstances. Because both parties agree that during the time period at issue the father's financial difficulties made him unable to make full payments, we find that the mother's delay was not unreasonable and also find that laches does not apply. *See Roszko v. Roszko,* 146 Ariz. 274, 276, 705 P.2d 951, 953 (App.1985).

## CONCLUSION

The evidence is insufficient to support waiver, estoppel, or laches defenses. We therefore conclude that the trial court abused its discretion in precluding the mother from collecting child support arrearages. The order is reversed and the matter is remanded for a determination of the amount of arrearages owed.

CLABORNE, P.J., and McGREGOR, J., concur.