NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

LAURIN COBURN, *Petitioner/Appellee,*

*v.*

MICHAEL RHODIG, *Respondent/Appellant.*

No. 1 CA-CV 18-0194 FC
FILED 4-9-2019

Appeal from the Superior Court in Maricopa County
No. FN2009-052965
The Honorable Richard F. Albrecht, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Schmillen Law Firm, PLLC, Scottsdale
By James R. Schmillen
*Counsel for Petitioner/Appellee*

Dickinson Wright, PLLC, Phoenix
By Marlene A. Pontrelli, Michael R. Scheurich
*Counsel for Respondent/Appellant*

<hr>

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

<hr>

**M O R S E**, Judge:

**¶1**   Michael Rhodig ("Husband") appeals from the spousal maintenance arrearage order in favor of Laurin Coburn ("Wife"). For the reasons stated below, we affirm the order.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**   The parties divorced in 2010. The consent decree required Husband to pay non-modifiable spousal maintenance of $3000 per month for 60 months starting December 2009. Husband stopped paying Wife in August 2010. After exchanging several emails in late 2010 in which Husband threatened to leave the state or commit suicide if Wife enforced the decree in court, the parties agreed that Husband would pay Wife a $5000 lump sum payment plus $1000 per month for twelve months, with the "final payment" due December 15, 2011. Wife agreed to "waive any other unpaid support owed her by [Husband]."

**¶3**   Husband made all payments due under the agreement. In December 2014, Wife filed a petition to enforce the spousal maintenance arrearages she claimed were due under the consent decree. According to Wife, she signed the agreement under duress. Husband argued the agreement was enforceable and supported the equitable defenses of wavier, estoppel, and laches.

**¶4**   The superior court concluded it lacked jurisdiction to modify the support order in the consent decree based on Husband's equitable defenses and granted Wife's petition to enforce. Husband appealed the judgment, and this Court reversed, holding the superior court had jurisdiction to consider Husband's equitable defenses and remanded for an evidentiary hearing. *Coburn v. Rhodig,* 243 Ariz. 24, 26-27, ¶¶ 10, 15 (App. 2017).

**¶5**   Following the hearing, the superior court found the agreement invalid because Wife signed it under duress. The court also rejected Husband's equitable defenses and reinstated the prior judgment

against Husband for $136,000 in spousal maintenance arrearages plus $37,259.39 in interest. Husband filed a timely notice of appeal from the judgment and subsequent order denying the motion for new trial. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2), (A)(5).

## DISCUSSION

¶6         Husband argues the 2010 agreement is enforceable pursuant to Arizona Rule of Family Law Procedure ("Rule") 69(A) (2018),[1] which provides that an agreement between the parties is valid and binding if it is in writing. Wife has the burden of proving the signed, written agreement was invalid. *See* Ariz. R. Fam. Law P. 69(B). The superior court concluded that Husband's failure to pay support to Wife pursuant to the consent decree, his assertion that he will not be forced to pay support, and his threats to commit suicide constituted duress and induced Wife to sign the agreement. The validity and enforceability of a contract is a mixed question of law and fact that we review de novo. *See Armiros v. Rohr,* 243 Ariz. 600, 605, ¶ 16 (App. 2018).

¶7         To constitute duress, an act or threat must be wrongful and preclude a party from exercising his or her free will and judgment. *See Dunbar v. Dunbar,* 102 Ariz. 352, 355-56 (1967); *USLife Title Co. of Ariz. v. Gutkin,* 152 Ariz. 349, 357 (App. 1986). This definition is based on the Restatement of Contracts § 492 (1932). *Dunbar,* 102 Ariz. at 355-56; *Inter-Tel, Inc. v. Bank of Am., Ariz.,* 195 Ariz. 111, 117, ¶ 35 (1999); *Republic Nat'l Life Ins. Co. v. Rudine,* 137 Ariz. 62, 65 (App. 1983). The Restatement (Second) of Contracts § 175 (1981) updated this definition due to its "vagueness and impracticability," providing that a contract is voidable if a party's "assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." *See* Restatement (Second) of Contracts § 175 cmt. b and § 175(1). The Restatement (Second) of Contracts § 176 details what constitutes an improper threat.

¶8         Husband contends Wife did not cite the Restatement (Second) of Contracts §§ 175 and 176 in the superior court and, therefore, has waived her arguments that these Restatement sections support a finding of duress. Wife did not specifically cite the Restatement (Second) of Contracts §§ 175

---

[1]     We cite to the version of the Rule in effect at the time of the 2018 hearing. Rule 69 has changed multiple times since 2010 (the time of agreement) and 2014 (when Wife filed the petition to enforce) but has always stated that an agreement is valid and binding if it is in writing.

and 176 in arguing duress in the superior court. Generally, arguments not raised below are deemed waived. *Evenstad v. State,* 178 Ariz. 578, 582 (App. 1993). Waiver, however is a procedural and not jurisdictional rule. *Id.* "If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue." *Id.; see also State v. Boteo-Flores,* 230 Ariz. 551, 553, ¶ 7 (App. 2012).

**¶9**         Under either definition of duress, the evidence supports the conclusion that Wife entered into the agreement under duress. The superior court found economic duress because Husband's failure to make the support payments created Wife's financial distress. The court relied on *Inter-Tel,* 195 Ariz. at 117-18, ¶¶ 37-40, which held that "duress does not exist merely because one party takes advantage of the financial difficulty of the other," but the court may find duress where one party contributed to or caused the financial difficulty of the other. The conduct that caused Wife's financial distress must have been improper or unfair. *See USLife Title Co.,* 152 Ariz. at 357 ("Unless wrongful, unlawful or unconscionable pressure is applied there is no business compulsion amounting to duress . . . .") (quoting *Frank Culver Elec., Inc. v. Jorgenson,* 136 Ariz. 76, 78 (App. 1983)). This is consistent with Restatement (Second) of Contracts § 176(2)(b), which provides, "A threat is improper if the resulting exchange is not on fair terms, and . . . the effectiveness of the threat in inducing the manifestations of assent is significantly increased by prior unfair dealing by the party making the threat." This section addresses "cases in which the party making the threat has by *unfair dealing* achieved an advantage over the recipient that makes his threat unusually effective." *See* Restatement (Second) of Contracts § 176 cmt. f (emphasis added).

**¶10**         Wife acknowledged that Husband was unable to pay the amounts owed under the consent decree. Thus, the evidence does not support the conclusion that Husband *improperly or unfairly* caused Wife's financial distress. Husband's failure to pay support was due to his own financial difficulties, not an improper motive. As such, it does not constitute a wrongful or improper threat.

**¶11**         In contrast, Husband's threats to leave the state or commit suicide if Wife enforced the decree in court were wrongful and improper. A threat to commit suicide, while not a crime, is a wrongful threat of

4

physical violence.[2]  *See* Restatement (Second) of Contracts § 176(1)(a) and cmt. b (stating threat of physical violence need not be directed at the recipient of the threat or his relative "if the threat in fact induces the recipient to manifest his assent").  Additionally, Husband's threat to ensure Wife would not receive any support payments if she went to court was improper because it violated his court-ordered obligation to pay support.  *See* Restatement (Second) of Contracts § 176(1)(a) and cmt. b; *see also* A.R.S. § 12-864 (defining contempt of court as the failure to obey court order or judgment).  Such threats constitute highly "manipulative conduct during the bargaining stage" and are, therefore, improper.  *See* Restatement (Second) of Contracts § 176 cmt. f.

**¶12**        The record also supports the conclusion that Husband's threats induced Wife to forego the substantial amount of spousal maintenance to which she was otherwise entitled, resulting in an unfair exchange.  *See* Restatement (Second) of Contracts § 176(2)(b) and cmt. f. Wife signed the agreement because she feared Husband would harm himself based on his threats.  Although Husband claimed his suicide threats were not serious, Wife believed him.  Wife also signed the agreement because Husband told her he was not going to pay her anything unless she signed.  In fact, Husband did not pay Wife anything until after she agreed to the modification.

---

[2]        We found two cases in which one party claimed duress resulting from the other party's suicide threat.  In *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 292-93 (Idaho 2006), the court found that, although "[s]uicide is a wrongful act," the threat did not induce the plaintiff to sign the contract because (1) one year passed between the threat and the contract and (2) plaintiff negotiated through attorneys.  This case is factually distinguishable.  We note that, like Arizona, suicide is not a crime in Idaho; yet the court found suicide was wrongful.  *See* A.R.S. § 13-1103(A)(3) (criminalizing assisted suicide); Idaho Code Ann. § 18-4017 (criminalizing assisting in a suicide).  In *Pelfrey v. Pelfrey*, 487 S.E. 2d 281, 285 (Va. Ct. App. 1997), the court concluded the husband *did not* sign the agreement in response to the wife's suicide threats, but for other reasons.  This case is also factually distinguishable.  *But compare Wackwitz v. Roy*, 418 S.E. 2d 861, 864 (Va. 1992) (holding suicide remains a common law crime in Virginia).

**¶13** Husband contends that Wife's assent was not a result of his threats because two months passed between his threats in October and the date Wife signed the agreement in December. We disagree. Less than three weeks passed between when Husband last threatened to leave the state "or worse" and when Wife signed the agreement. Wife's response to the threats was to try and reach an agreement, thus supporting her claim that she took his threats seriously.

**¶14** In addition to an improper threat, duress requires the absence of a reasonable alternative. *See Inter-Tel*, 195 Ariz. at 118-19, ¶ 42 (concluding no reasonable alternative available where plaintiff could not find another lender due to defendant bank's conduct); *Sharp v. Sharp*, 179 Ariz. 205, 209 (App. 1994) (rejecting claim that wife signed agreement under duress because she could have called her attorney a second time or mailed a letter when her attorney did not accept her collect call), *superseded by rule on other grounds as recognized in Hutki v. Hutki*, 244 Ariz. 39, 43, ¶ 18 (App. 2018); *Pleasants v. Home Fed. Sav. & Loan Ass'n*, 116 Ariz. 319, 321 (App. 1977) (finding no duress where reasonable alternative was available to plaintiffs); *see also* Restatement (Second) of Contracts § 175.

**¶15** Wife contends that she had no reasonable alternative in light of Husband's threats to leave the state or commit suicide. The superior court did not expressly state that Wife had no reasonable alternative, but by finding duress, we presume the court made this finding. *See Rinegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 20 (App. 2012) (presuming superior court found every fact necessary to support its ruling because parties did not request written findings of fact or conclusions of law).

**¶16** Husband argues that Wife could have sought relief in the courts, as she did in 2014. Wife contends this was not a reasonable alternative because Husband threatened to leave the state or commit suicide if she took him to court. Asserting one's rights in court is generally a reasonable alternative. *See generally, Republic Nat'l Life Ins. Co.*, 137 Ariz. at 65. "This alternative may not, however, be reasonable if the threat involves, for instance . . . the use of oppressive tactics, or the possibility of emotional consequences." Restatement (Second) of Contracts § 175 cmt. b. "The standard is a practical one under which account must be taken of the exigencies in which victim finds himself . . . ." *Id*.

**¶17** Husband's threats constitute "oppressive tactics" with "emotional consequences" to Wife if he followed through. Wife believed Husband's threats were serious: she contacted Husband's son after receiving Husband's threats; both she and Husband's son attempted to contact Husband for several days after the threat was made; and, after Wife contacted security services, security services performed a wellness check at Husband's home. Although Husband claimed he was not serious, nothing in the record suggests that Wife's belief and response were unreasonable. Husband cannot make improper threats, then claim he was not serious after Wife acceded to his threats. *See generally Ray v. Mangum,* 163 Ariz. 329, 333 (1989) (holding that where conflicting testimony exists, one party's unspoken assumptions and beliefs are not clear evidence that other party agreed). In light of these facts, we cannot find the court erred by finding the agreement was a result of duress and, therefore, not enforceable under Rule 69.[3]

**¶18** Husband also argued the agreement established the equitable defenses of waiver, estoppel, and laches. Husband must present clear and convincing evidence of these equitable defenses. *See State ex rel. Dep't of Econ. Sec. v. Dodd,* 181 Ariz. 183, 186-87 (App. 1994). We defer to the superior court's factual findings absent clear error even if substantial conflicting evidence exists. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County,* 208 Ariz. 532, 535, ¶ 10 (App. 2004).

**¶19** To constitute a waiver of support arrearages, "the facts must demonstrate by '*clear and compelling evidence*' the voluntary and intentional abandonment of a known right." *Ray,* 163 Ariz. at 332 (quoting *Cordova v. Lucero,* 129 Ariz. 184, 187 (App. 1981)). As stated above, Wife signed the agreement under duress. Therefore, Wife did not voluntarily waive her rights to the spousal maintenance due under the decree.

**¶20** Husband also argues that by signing the agreement and accepting reduced payments, Wife is estopped from collecting any arrearages. To establish equitable estoppel, Husband must show "(1) conduct by which one induces another to believe in certain material facts; and (2) the inducement results in acts in justifiable reliance thereon; and (3) the resulting acts cause injury." *Ray*, 163 Ariz. at 333. The superior court found any reliance on Husband's part was a result of his own wrongful acts

---

[3] Because the agreement was unenforceable, Husband cannot establish an accord and satisfaction. *See Frank Culver Elec.,* 136 Ariz. at 77 (holding essential contract elements must exist for accord and satisfaction).

and found no injury because Husband would only be required to pay what the decree originally required. We review the court's decision not to find estoppel for an abuse of discretion. *Flying Diamond Airpark, LLC v. Meienberg,* 215 Ariz. 44, 50, ¶ 27 (App. 2007).

**¶21** Husband could not justifiably rely on an agreement Wife signed under duress. Furthermore, Wife testified that Husband ignored her attempts to communicate after December 2011, and she was subsequently unable to locate him. Husband's reliance on Wife's failure to demand additional support payments was not justifiable because his conduct was, at least in part, the reason Wife did not demand payment sooner. Furthermore, Husband cannot show prejudice based solely on the increased financial burden caused by interest accruing on the arrearages. *See In re Marriage of Yuro,* 192 Ariz. 568, 574, ¶ 17 (App. 1998) (holding prejudice not shown by the increased financial burden resulting from compound interest on arrearages and because obligor did not change his financial position in reliance on the agreement).

**¶22** The equitable defense of laches required Husband to show Wife unreasonably delayed bringing a claim and prejudice from the delay. *See Dodd,* 181 Ariz. at 188. As stated above, Wife was unable to enforce the decree earlier because Husband avoided her attempts to communicate and she was later unable to determine his whereabouts until she hired a private investigator. Thus, the delay was not unreasonable. Additionally, Husband failed to establish any prejudice from the delay. The increased financial burden alone does not constitute prejudice for purposes of laches. *See Yuro,* 192 Ariz. at 574, ¶ 17. Husband did not establish any equitable defenses to Wife's enforcement action.

## ATTORNEYS' FEES AND COSTS ON APPEAL

**¶23** Both parties claim the other was unreasonable on appeal and request an award of attorneys' fees pursuant to A.R.S. § 25-324. We find neither party took unreasonable positions on appeal, and we lack any evidence regarding the parties' comparable financial resources. Accordingly, we decline to award attorneys' fees to either party. As the successful party, Wife is entitled to an award of costs on appeal. *See* A.R.S. § 12-342.

## CONCLUSION

**¶24** We affirm the arrearage judgment. Wife is awarded her costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

