NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

MARIA TORRES ALVARES, *Petitioner/Appellee,*

*v.*

LUIS ALVAREZ MUNGUIA, *Respondent/Appellant.*

No. 1 CA-CV 19-0281 FC
FILED 3-3-2020

Appeal from the Superior Court in Maricopa County
No. FC2013-050756
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Reppucci & Roeder, PLLC, Phoenix
By Ryan M. Reppucci
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　　Luis Alvarez Munguia ("Munguia") appeals from a superior court order requiring the sale of two properties and imposing a sanction of $1,000 payable to his former spouse Maria Alvares ("Alvares") in response to Alvares' petition to enforce the divorce decree.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Munguia and Alvares married in 1987.  Alvares petitioned for divorce in 2013.  Pertinent to this appeal, the 2013 divorce decree addressed two properties: a residence in Phoenix ("Alice Property") and undeveloped acreage in Show Low ("Show Low Property").  The decree ordered that:

> 1) The [Alice Property] is awarded to [Munguia] under the following conditions.  The parties shall get an appraisal of the value of the property.  If there is no equity in the property, [Munguia] shall own the property as his separate property.  If there is equity in the property, [Munguia] shall pay to [Alvares] 1/2 of the equity, at which time [Munguia] shall then own the property as his separate property. 2) Upon the parties' sale of the [Show Low Property], they shall apply the proceeds to pay off the Yamaha motorcycle loan.  The parties shall split the remaining proceeds 50% to each party.

**¶3**　　　　In the five years following the issuance of the divorce decree, Munguia continued to reside in the Alice Property.  Neither party obtained an appraisal of the Alice Property, and the parties did not sell the Show Low Property.  Alvares separately paid $4,000 to settle the Yamaha motorcycle loan.

**¶4**　　　　In September 2018, Alvares filed a petition to enforce the divorce decree's property division. The petition requested reimbursement of one-half of the $4,000 spent to pay off the motorcycle loan and for the superior court to order Munguia to pay Alvares' attorneys' fees as a

sanction for his non-compliance with the divorce decree. Munguia acknowledged Alvares' right to a portion of the equity in one of the properties (but did not identify which one), but otherwise asked the superior court to deny Alvares' motion.

¶5        At a subsequent pretrial hearing, the superior court ordered both parties to comply with disclosure and discovery obligations, to file affidavits of financial information ("AFI"), and to file a joint or separate pretrial statement. At trial, the superior court found the parties had not filed AFIs and Munguia had not filed a pretrial statement or provided certain documents requested by Alvares' attorney. After questioning Munguia regarding his failure to comply with the decree and other court orders, the superior court found "no good cause" for his failure to do so and determined it would "proceed by default."

¶6        After Alvares testified, the superior court ordered both properties sold through a real estate commissioner, ordered the equity "less fees and costs" be split equally between the parties, and ordered Munguia to reimburse Alvares $2,000 for the repayment of the motorcycle loan.[1] The superior court denied Alvares' request for $2,500 in attorneys' fees, but ordered Munguia to pay Alvares $1,000 "as a sanction for his failure to follow a prior court order and properly participate in this cause of action."

¶7        Munguia filed a motion to alter or amend the judgment, but the superior court ruled the motion was untimely under Arizona Rule of Family Law Procedure ("Rule") 83(c)(1).[2] Munguia timely filed this appeal, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A).

## ANALYSIS

¶8        In his appeal, Munguia argues the superior court erred in (1) modifying the decree, (2) permitting Alvares to assert a claim five years after the divorce decree, (3) sanctioning Munguia for failing to comply with

---

[1]        Munguia does not challenge the reimbursement order on appeal.

[2]        Absent material revision after the relevant date, we cite the current version of the Arizona Rules of Family Law Procedure.

pretrial orders by proceeding by default, and (4) awarding Alvares $1,000 as a sanction. We address each issue in turn.[3]

I.      *Modification of Decree*

**¶9**      Munguia argues the superior court's 2019 order requiring the sale of both the Alice and the Show Low Properties improperly modified the 2013 divorce decree. He also argues that if a property is sold, the parties should share any net equity based on that property's value as of the date of the divorce decree. We review a court's ruling on a post-decree petition and its decision to modify a decree of dissolution for abuse of discretion. *See In re Marriage of Priessman*, 228 Ariz. 336, 338, ¶ 7 (App. 2011); *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010); *see also Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998) ("The trial court's apportionment of community property will not be disturbed on appeal absent abuse of discretion.").

**¶10**      The superior court retains jurisdiction to enforce a dissolution decree. *Jensen v. Beirne*, 241 Ariz. 225, 229, ¶ 14 (App. 2016). "[T]he court . . . may either grant relief in accordance with the original decree, or if such relief will no longer achieve full and complete justice between the parties, it may alternatively make new orders, consistent with the parties' property interests, to accomplish that end." *Id.* A superior court's authority to make new orders related to divorce decrees is limited, however, by A.R.S. § 25-327(A), which requires the court find "the existence of conditions that justify the reopening of [a property disposition judgment] under the laws of this state."

**¶11**      Here, as to the Alice Property, the 2013 divorce decree conditionally awarded it to Munguia, directed the parties to "get an appraisal of the value of the property" and required Munguia to pay Alvares one-half of the equity "[i]f there is equity in the property." The 2013 decree did not, however, contemplate the parties' non-compliance with the court's orders, and did not explicitly state how the property would be held or divided until the directives were met. Because the directives were not met, Munguia and Alvares by operation of law currently own the Alice Property as tenants in common, which is the default status in a division of community property. *See* A.R.S. § 25-318(D) ("The community, joint tenancy and other property held in common for which no provision is

---

[3]      Alvares did not file an answering brief. We could regard this as a confession of reversible error, but in our discretion, we decline to do so. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).

made in the decree shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest."); *Dressler v. Morrison*, 212 Ariz. 279, 282, ¶ 16 (2006) ("The legislature also specified a remedy for [when a dissolution decree does not dispose of all community property]: Former spouses will hold the property as tenants in common.").

**¶12** Munguia argues that under the 2019 orders, Alvares "would reap a significant windfall" from the appreciation in the Alice Property.[4] As a tenant in common, however, Alvares retains "an undivided one-half interest." *See* A.R.S. § 25-318(D). Any additional distribution she receives from the sale of the Alice Property is not a windfall, but a reflection of an increase in the value of her interest in the commonly held asset.

**¶13** The superior court directed the immediate sale of the Alice Property and the distribution of one-half of the equity, minus fees and costs, to each party. This modification of the 2013 decree dissolution is consistent with the parties' interests in the Alice Property, as they own the property as tenants in common. *See Lee v. Lee*, 133 Ariz. 118, 121 (App. 1982) (describing the superior court's "broad discretionary powers" to "facilitate the equitable division of the property" under A.R.S. § 25-318). Because the court has authority to "make new orders" to accomplish "full and complete justice between the parties," *Jenson*, 241 Ariz. at 415, ¶ 14, and because Alvares has been deprived of her share of the equity in the Alice Property for more than five years, we find the superior court did not abuse its discretion in ordering the immediate sale of the Alice Property.

**¶14** As to the Show Low Property, we construe the 2013 decree as directing the parties to sell that property within a reasonable time period. *See Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11 (App. 2007) ("To interpret the decree, we apply the general rules of construction for any written instrument."); *see also Dutch Inns of Am., Inc. v. Horizon Corp.*, 18 Ariz. App. 116, 119 (1972) (explaining "a reasonable time is implied" if no time for performance is specified). We presume the superior court complied with its statutory duties in issuing the decree, *Cohen*, 215 Ariz. at 67, ¶ 14, and holding the property indefinitely as tenants in common does not achieve the statutory requirement that the superior court equitably divide and distribute the community's assets at the time of dissolution. *See* A.R.S. § 25-318(A). At the time the decree was issued in 2013, the superior court had every reason

---

[4] Munguia does not suggest that the Alice Property's value may have depreciated since the 2013 decree and, in fact, states that "the Phoenix real estate market has appreciated significantly in the last five years."

to expect the parties to comply with its directives within a reasonable period of time. They did not. As such, the superior court did not err or abuse its discretion in its 2019 order to immediately sell the Show Low Property.

¶15 Munguia also argues he has paid all expenses related to both properties since the 2013 decree, and it would be inequitable for Alvares to share in the appreciation of the properties. We note that, pursuant to the terms of the 2013 decree, *both parties* were obligated to proceed with obtaining a timely appraisal of the Alice Property and to sell the Show Low Property. Munguia does not contend, however, that he has in any respect attempted to comply with the orders in the 2013 decree. In fact, Alvares testified at trial that she had attempted to contact Munguia to comply with the 2013 orders, but "he would not answer me." The superior court heard testimony concerning Alvares' attempts to follow up—and Munguia's decision to ignore those requests—and was in the best position to evaluate the parties' credibility and comparative responsibility on the compliance issue. *See Brevick v. Brevick*, 129 Ariz. 51, 53 (App. 1981) ("[T]he credibility of witnesses is a matter peculiarly within the province of the trier of facts.").

¶16 Munguia argues the divorce decree requires any equity distributions to be based on the value of the properties at the time of the divorce decree in April 2013. He cites no authority requiring the superior court to issue such an order, and we do not find this argument persuasive. No sales occurred in 2013, and the parties still own the properties as tenants in common, so there is no legitimate argument to support using the fiction of 2013 property values to calculate distribution of any equity.

¶17 Further, we note that if, as Munguia suggests, there was net equity in the properties—either as of 2013 or accumulating in the subsequent years—Munguia's failure to cooperate with efforts to comply with the decree deprived Alvares of timely access to her share of the equity in the properties. We accordingly affirm the superior court's ruling that, as per the 2013 decree, any net equity arising out the sale of the Show Low Property should be divided equally between the parties. If there is negative equity following that sale, or the sale of the Alice Property, the superior court can determine how that loss should be allocated.

II.     *Laches*

¶18 Munguia argues for the first time on appeal that Alvares is barred from asserting her claim to any equity in the properties because she "unreasonably delay[ed]" asserting her claim for five years following the

6

divorce decree. The equitable defense of laches requires Munguia to show Alvares unreasonably delayed bringing her claim and prejudice to Munguia from the delay. *Dep't of Econ. Sec. v. Dodd*, 181 Ariz. 183, 188 (App. 1994). But, by failing to raise the issue before the superior court, Munguia has waived this argument on appeal. *Reeck v. Mendoza*, 232 Ariz. 299, 303, ¶ 14 (App. 2013). Further, as previously noted, the parties' failure to comply with the divorce decree resulted in their holding these properties as tenants in common. As such, Alvares would clearly be within her rights to seek partition and/or sale of the properties. *See* A.R.S. §§ 12-1211, -1218(A)-(C); *Cohen*, 215 Ariz. at 65, ¶ 6 (noting partition statutes provide for sale of common ownership property incapable of partition); *Occhino v. Occhino*, 164 Ariz. 482, 484 (App. 1990) ("The right of partition is an incident of common ownership . . . .").

### III. Sanctions

**¶19** Munguia argues he was entitled to an evidentiary hearing to determine whether lesser sanctions were appropriate before imposing the sanction of default. "We review the imposition of sanctions for an abuse of discretion." *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 153, ¶ 40 (App. 2009).

**¶20** Rule 76.2 permits the superior court to impose sanctions on "its own initiative" if a party fails to obey a pretrial order or fails to participate in good faith in preparing a pretrial statement, and if the court finds the party does not show good cause for doing so. To support his assertion the superior court was required to hold an evidentiary hearing, Munguia cites *AG Rancho Equip. Co. v. Massey-Ferguson, Inc.*, 123 Ariz. 122, 123 (1979), and *Seidman v. Seidman*, 222 Ariz. 408, 411 (App. 2009). These cases, however, address default based on a discovery sanction. Here, the superior court proceeded by default based on more than Munguia's discovery violations; the superior court also cited his failure to file a pretrial statement and an AFI pursuant to Rule 76.2. Thus, the cases on which Munguia relies are inapposite, and the superior court was not required to hold an evidentiary hearing before proceeding by default.

**¶21** At trial and in his opening brief, Munguia argues he failed to follow court orders because he has limited English skills and did not have the assistance of counsel. A translator interpreted for both parties at the trial-setting hearing and at trial. The superior court gave Munguia several opportunities to explain why he failed to comply with court orders. Although in his brief Munguia contends his answers indicate he did not understand the superior court's questions or the orders, Munguia told the superior court he did not file a pretrial statement because "I never filled it

out. I don't know. I don't have an attorney and I don't have money to pay for an attorney." He stated he could not read the paperwork in English. The superior court, however, reviewed the record from the trial-setting hearing and found it had verbally warned the parties as to the potential consequences of failing to comply with court orders. On this record, we find no abuse of the superior court's discretion in determining no good cause existed for Munguia's failures to comply with court orders and in imposing sanctions against Munguia.

## IV. Attorneys' Fees

**¶22** Finally, Munguia argues the superior court erred in awarding $1,000 in attorneys' fees to Alvares because it did not consider the financial resources of Munguia or Alvares under A.R.S. § 25-324. The record, however, establishes the superior court did not award Alvares attorneys' fees under § 25-324. Rather, the superior court ordered Munguia to pay a portion of Alvares' attorneys' fees and costs as a sanction under Rule 76.2 for "his failure to follow court orders and properly participate in this cause of action."

**¶23** Munguia contends that because both parties failed to submit an AFI, the superior court erred in sanctioning only Munguia. The superior court, however, did limit Alvares' request for attorneys' fees "through default" and did not permit her to testify as to her requested award of fees under A.R.S. § 25-324. The superior court denied Alvares' request of $2,500 and instead ordered a lesser amount as a sanction. On this record, we find no abuse of discretion. *See Green*, 221 Ariz. at 153, ¶ 40.

**¶24** On appeal, Munguia requests his attorneys' fees and costs pursuant to ARCAP 21, but does not otherwise identify any authority under which he claims an award of fees. *See* ARCAP 21(a)(2) ("This Rule only establishes the procedure for claiming attorneys' fees and does not create any substantive right to them."). Accordingly, we deny his request for attorneys' fees. Munguia has not prevailed on appeal and, in our discretion, we deny his request for costs. *See Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 134-35, ¶ 38 (App. 2012).

## CONCLUSION

¶25        For the foregoing reasons, we affirm the superior court's order to sell the Alice Property and Show Low Property and to divide the net equity equally between the parties based upon the properties' current respective values; affirm the court's sanction award of $1,000 in favor of Alvares; and deny Munguia's request for attorneys' fees and costs.



AMY M. WOOD • Clerk of the Court
FILED: AA