NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, ex rel., DES
MANUELA GUTIERREZ, *Petitioners/Appellees*,

*v.*

RAUL GUTIERREZ, *Respondent/Appellant*.

No. 1 CA-CV 19-0603 FC

FILED 7-30-2020

Appeal from the Superior Court in Maricopa County
No. DR1998-017192
The Honorable Brian S. Rees, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Petitioner/Appellee Arizona Department of Economic Security*

Raul Gutierrez, Florence
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

**¶1**        Appellant Raul Gutierrez ("Father") appeals the superior court's order denying his challenges to the Arizona Department of Economic Security ("ADES") Division of Child Support Services' ("DCSS") efforts to collect past-due child support from him.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In this Title IV-D case,[1] Father has two children, R.G., born August 1984, and J.G., born November 1985.  In September 1998, DCSS filed an action to establish the child support obligation owed by Father for the support of his two children.  Father was incarcerated at the time.  Following a hearing held in October of that year, the superior court ordered Father to pay $23 per month for child support, and it found Father owed a past-due amount of $66.  The superior court subsequently issued an order of assignment to collect the child support amounts owed.

**¶3**        After Father was released from prison, the State moved to modify Father's child support obligation in May 2002.  The superior court granted the request, finding Father's income had changed.  The court modified Father's child support obligation to the amount of $371 per month, with an additional $23 per month in arrears.

**¶4**        In December 2004, both children were over the age of eighteen, but Father had child support amounts that remained unpaid.  The superior court issued an order to withhold income to collect $371 per month from Father in past-due support.  In March 2008, Father's past-due support remained unpaid, and the superior court again filed an order to withhold income for $371 per month.

---

[1]        Title IV-D refers to Title IV-D of the Social Security Act.  42 U.S.C. §§ 651-669b (2018).

¶5        The obligee of Father's past-due support, Manuela Gutierrez ("Mother"), passed away in 2013.  Pursuant to Arizona Revised Statutes ("A.R.S.") section 46-407, the State was assigned the arrears and sought to collect on the remaining balance of $14,975.96.  The superior court again filed an order, in March 2014, to withhold $371 per month from Father's income.

¶6        In August 2017, while Father was back in the custody of the Department of Corrections, DCSS caused $2,177.31 to be withdrawn from Father's inmate account.  In December 2018, Father filed a request for administrative review of the past-due child support he owed, and ADES affirmed Father's outstanding child-support amount and DCSS' enforcement actions.[2]  In February 2019, Father sought judicial review of ADES' administrative decision.  The superior court held an evidentiary hearing in May 2019, and it denied Father's challenges to DCSS' collection of past-due child support.  Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶7        We are bound by the superior court's factual findings unless they are clearly erroneous.  *Ariz. Bd. of Regents v. Phx. Newspapers, Inc.*, 167 Ariz. 254, 257 (1991).  However, we review the superior court's conclusions of law *de novo*.  *Id.*

¶8        Father argues that DCSS' enforcement action was made "without notice within 10 years after the youngest child was emancipated" in violation of A.R.S. § 25-503(L) and the doctrine of laches.  Section 25-503(L) states:

> If the obligee, the department or their agents make efforts to collect a child support debt more than ten years after the emancipation of the youngest child subject to the order, the obligor may assert as a defense, and has the burden to prove, that the obligee or the department unreasonably delayed in attempting to collect the child support debt.  On a finding of unreasonable delay a tribunal, as defined in § 25-1202, may determine that some or all of the child support debt is no longer collectible after the date of the finding.

Here, the youngest child was emancipated in November 2003, and Father argues DCSS unreasonably delayed in collecting the child support debt

_____

[2]        The administrative review record is not part of the record on appeal.

until 2018. The superior court, however, found that DCSS did not unreasonably delay in its collection of Father's debt.[3]

¶9        The superior court's order states, "Father testified the State has been coming after him the past ten years for this debt, and the State indicated it has been notifying Father of collections when he was in and out of prison." A financial summary provided by the State shows the State has collected child support debt from Father on numerous occasions throughout 2000, 2001, 2002, 2008, 2013, 2014, and 2017. On the record before this court, Father has failed to prove that ADES or DCSS unreasonably delayed in collecting the child support debt. The superior court did not err.

¶10        Father also contends that under A.R.S. § 25-517, DCSS was required to give him "proper notice of child support every six months and within 10 years after the child was emancipated." However, A.R.S. § 25-517(A) states:

> The department or its agent shall notify an obligor who is at least six months in arrears in making child support payments, periodic payments on a support arrearage or periodic payments pursuant to a court order of support that the obligor may be referred to court for a hearing to suspend or deny the obligor's driver license or recreational license.

This statute specifically applies in the context of license suspension and does not appear to be relevant to this case, as Father has not argued his license was suspended for failure to pay child support. Regardless, the statute does not require DCSS to send notices of arrears continuously and every six months for ten years, as Father contends. Father's argument, therefore, fails.

¶11        Father also claims pursuant to A.R.S. § 25-327(D), the superior court should have modified his support order terminating the accruing interest because he was incarcerated. Section 25-327(D) states:

> Notwithstanding any other law, pursuant to a petition filed pursuant to this section the court may suspend the imposition of future interest that accrues on a judgment for support

---

[3]        Father failed to submit the hearing transcript. When an appellant fails to include transcripts or other necessary documents, we assume the missing portions of the record support the superior court's findings and ruling. *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995); *see also* ARCAP 11(c).

issued pursuant to this article for the period of time that the petitioner is incarcerated or has physical or mental disabilities to the extent that the person is unable to maintain employment.

Section 25-327(D) gives the superior court discretion to suspend the imposition of future interest during an inmate's period of incarceration. But the statute is clear that such relief may be entertained by the court when a petition has been filed requesting it. There is nothing in the record that shows Father ever filed a petition pursuant to § 25-327 seeking to suspend the imposition of future interest during his incarceration. The superior court did not err.

¶12    Father next argues DCSS committed "illegal conversion" when it collected $2,177.31 from Father's prison retention account, violating Father's "interest of equity and equal protection." However, the superior court found Father failed to timely request a review of this enforcement action. According to a financial summary provided by the State, the funds were collected from Father's account in August 2017, and the record shows Father first filed a request for administrative review in December 2018. Pursuant to A.R.S. § 25-521(B), Father was required to request administrative review fifteen days after receiving notice of the State's enforcement action. He did not do so.

¶13    The superior court also found the enforcement action was proper. Under A.R.S. § 25-521(A), "if the obligor is in arrears in an amount equal to twelve months of support, the department may issue a levy and collect the amount owed by the obligor by levy on all property and rights to property not exempt under federal or state law." Father has failed to explain how the collection of funds was improper or that his inmate account was otherwise exempt under federal or state law.

¶14    Father further claims "that the State has committed fraud against him when it knowingly and intentionally permitted the principal ending balance and interest ending balance to accrual [sic] to an enormous amount within a ten (10) year period without a proper notice." However, the superior court found the State had provided Father with notices of his support debt during that ten-year period. Additionally, A.R.S. § 25-510(E)-(F) provide that interest accrues on past support; the State did not commit fraud by allowing Father's unpaid debt to accrue interest.

¶15    Finally, Father contends the collection of past-due support is improper because the State was no longer providing financial assistance to

Mother and the children are emancipated. However, the State "has the right to pursue a child support enforcement action whether or not the minor child is supported by government funds." *State ex rel. Dep't of Econ. Sec. v. Dodd*, 181 Ariz. 183, 185 (App. 1994); *see also* A.R.S. § 25-509(A) ("The attorney general or county attorney on behalf of this state may initiate an action or intervene in an action to establish, modify or enforce a duty of child support, including medical support, regardless of the welfare or nonwelfare status of the person to whom the duty of support is owed."). The superior court did not err.

**CONCLUSION**

¶16        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA