NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MINDY A. EGLIVITCH,
*Petitioner/Appellee/Cross-Appellant*,

*v.*

DOUGLAS A. DAVIS,
*Respondent/Appellant/Cross-Appellee.*

No. 1 CA-CV 24-0118 FC

FILED 04-08-2025

Appeal from the Superior Court in Maricopa County
No.  FC2019-072033
The Honorable Stasy D. Avelar, Judge

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

COUNSEL

Douglas A. Davis, Wittmann
*Respondent/Appellant/Cross-Appellee*

Scottsdale Family Law, PLLC, Scottsdale
By Brian G. Winter
*Petitioner/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Angela K. Paton joined.

---

**T H U M M A**, Judge:

¶1        In this post-decree family court matter, Douglas A. Davis (Father) appeals the superior court's ruling on his petition to modify legal decision-making, parenting time and child custody as well as an award of attorneys' fees to Mindy A. Eglivitch (Mother). Mother cross-appeals the court's ruling on child support arrearages and attorneys' fees, as well as the ruling on her petition to enforce child support orders. As discussed more fully below, the court affirms in part, reverses in part and remands.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Father married in 1992 and have three children in common. The two divorced in 2020. The divorce decree granted Mother sole legal decision-making and granted Father parenting time on alternating weekends and one weekday agreed upon by both parties. Although the child support worksheet attached to the decree showed that Father should pay $938 in monthly child support, the parties agreed he would pay $850 in monthly child support.

¶3        In May 2022, Father filed a petition to modify legal decision-making, parenting time and child support. Father sought to modify the parenting plan because the oldest child, W.D. (who would turn 18 in September 2022) had been living with Father full-time since December 2021. Father apparently sought joint or sole legal decision-making for W.D. For the two younger children, T.D. and M.D. (twins born in December 2008), Father sought equal parenting time with a corresponding adjustment in child support. Mother responded that there had been no substantial and continuing change in circumstances warranting a modification of decision-making for the children and opposed any change in parenting time for the twins. She agreed, however, that child support should be recalculated. At Father's request, the court appointed a court appointed advisor (CAA) to

perform an investigation and report. *See* Ariz. Rev. Stat. (A.R.S.) § 25-406 (2025).[1]

**¶4**     In August 2023, Mother filed a petition to enforce, seeking payment of child support and unreimbursed medical expenses. She also sought a contempt finding. In November 2023, Mother filed another petition to enforce, addressing parenting time and asking that Father be held in contempt for taking T.D. on an out-of-state trip during Mother's scheduled parenting time. The court ordered that Mother's two petitions be heard in conjunction with the evidentiary hearing on Father's petition.

**¶5**     At the November 29, 2023 evidentiary hearing, the court heard testimony from both parties and the CAA, received evidence and heard arguments from both parties' attorneys. After taking the matter under advisement, on January 4, 2024, the court resolved all then-pending matters in a 27-page judgment pursuant to Arizona Rules of Family Procedure 78(b).

**¶6**     In addressing Father's petition to modify, the court found a substantial and material change in circumstances. After considering the evidence presented, however, the court found it was not in the children's best interests to modify legal decision-making, leaving Mother with sole legal decision-making authority. The court modified the parenting plan to grant Father parenting time on alternating weekends and alternating weeks during the summer. The court calculated back child support, starting the month after Mother was served with Father's petition to modify and recognizing W.D. was emancipated in September 2022, and determined Father owed Mother $6,627 in back child support from July 2022 through December 2023. The court modified child support going forward to $1,114 per month.

**¶7**     As to Mother's August 2023 petition to enforce, the court found Father had paid his child support obligations in full through June 2022 and accordingly denied the petition as to child support. The court also found, however, that Father owed Mother $1,368.65 in unpaid medical expenses. For Mother's November 2023 petition to enforce, the court found Father in contempt for taking T.D. out-of-state during Mother's parenting time. Concluding that "Father ha[d] taken unreasonable positions

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

throughout this litigation," the court awarded Mother's attorneys' fees "as to the Petitioner's [sic] to Enforce ONLY."

¶8            Meanwhile, on December 29, 2023, the court entered two Rule 78(c) child support orders for the twins. On January 25, 2024, Father filed a notice of appeal "from the Order made and entered in this case on the 29th of December, 2023." On February 6, 2024, Mother filed a motion for reconsideration, challenging the court's rulings on parenting time, back child support, enforcement of child support and attorneys' fees. On February 14, 2024, the court issued an order, which in the text purported to be a judgment, awarding Mother $11,781.70 in attorneys' fees. Later on February 14, 2024, Mother filed a notice of cross-appeal from the January 4, 2024 Rule 78(b) judgment. On February 16, 2024, the court entered an unsigned minute entry purporting to enter a judgment awarding Mother the same $11,781.70 in attorneys' fees. In a signed Rule 78(c) judgment entered April 4, 2024, the court denied Mother's motion for reconsideration. Father filed a timely notice of appeal from the April 4, 2024 judgment. Mother then filed a timely amended notice of cross-appeal.

## DISCUSSION[2]

### I.     This Court Has Appellate Jurisdiction Over Father's Appeal and Mother's Cross-Appeal.

¶9            This court's appellate jurisdiction is set by statute, as applicable here, A.R.S. § 12-2101(A). To invoke this court's appellate jurisdiction, a party seeking to appeal must (1) invoke a statutory basis for appeal and (2) comply with any applicable procedural requirements, here either Rule 78(b) (a partial final judgment) or 78(c) (a final judgment as to all claims, issues and parties). A purported judgment also must comply with form requirements. *See* Ariz. R. Fam. L.P. 78(g)(1). Although there may be more than one Rule 78(b) partial final judgment resolving portions of a petition, only one Rule 78(c) final judgment as to all claims, issues and parties is proper in resolving a petition or consolidated petitions.

---

[2] Mother argues the court should strike Father's brief for failure to reference the record as required by ARCAP 13(a)(5). Father's brief is deficient because it does not provide consistent citations to the record for his factual assertions or arguments. The court will, nevertheless, address the merits of this appeal given the best interests of minor children are involved. *See Candia v. Soza*, 251 Ariz. 321, 323–24 ¶ 7 (App. 2021) (citation omitted).

**¶10**         This case had six judgments entered during a four month period: (a) the two December 29, 2023 purported Rule 78(c) judgments addressing child support; (b) the January 4, 2024 Rule 78(b) judgment resolving the petitions; (c) the February 14, 2024 order, stating it was a judgment but without specifying any Rule; (d) the February 16, 2024 unsigned minute entry purporting to enter a judgment without specifying any Rule and (e) the April 4, 2024 Rule 78(c) judgment.

**¶11**         The January 4, 2024 Rule 78(b) partial final judgment, and the April 4, 2024 Rule 78(c) final judgment as to all claims, issues and parties, were proper and in proper form. The others were not. The child support orders did not resolve all claims and issues then pending, meaning they could not be Rule 78(c) judgments. The February 2024 rulings were not in the proper form under Rule 78(g)(1) and did not contain required language under either Rule 78(b) or 78(c). The record suggests the parties were confused by these multiple judgments.

**¶12**         As applied here, however, this court has appellate jurisdiction over Father's appeal and Mother's cross-appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## II.     Applicable Standards of Review.

**¶13**         The court reviews the superior court's decision regarding legal decision-making, parenting time and child support for an abuse of discretion. *See In re Marriage of Diezsi,* 201 Ariz. 524, 525 ¶ 3 (App. 2002) ("We will not disturb a trial court's decision on child custody absent a clear abuse of discretion.") (citation omitted); *Nold v. Nold*, 232 Ariz. 270, 273 ¶ 11 (App. 2013) ("On appeal, we will not disturb the family court's custody or parenting time orders absent an abuse of discretion.") (citations omitted). An award of attorneys' fees and costs is also reviewed for an abuse of discretion. *Tucson Ests. Prop. Owners Ass'n v. Est. of Jenkins*, 247 Ariz. 475, 478 ¶ 8 (App. 2019) (citing cases).

**III.    The Superior Court Did Not Err in Affirming Mother's Sole Decision-Making Authority and Denying Father's Request for More Parenting Time.**

¶14         Father claims the superior court erred in "revert[ing back] to the 2020 divorce decree in awarding Mother sole decision-making and Father parenting time only on alternating weekends." Father argues the decision "fails to consider the evidence that points to a significantly dysfunctional relationship between Mother and her children."

¶15         To modify a final legal decision making or parenting time order, "the court must first determine whether there has been a material change in circumstances affecting the welfare of the child[ren]." *See Canty v. Canty*, 178 Ariz. 443, 448 (App. 1994). "Only after the court finds a change has occurred does the court reach the question of whether a change in custody would be in the child's best interest." *Pridgeon v. Superior Ct.*, 134 Ariz. 177, 179 (1982) (citing cases). When determining legal decision-making and parenting time, the court must consider all factors that are relevant to the child's physical and emotional well-being, including eleven factors enumerated in A.R.S. § 25-403(A). The court is required to "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B).

¶16         Father argues the superior court failed to consider (1) T.D.'s requests to live with Father full-time, (2) W.D.'s comments to the CAA that Mother was "cruel" and "overly punitive" and (3) Father's testimony that Mother directed Father to spank the children. Not so. The superior court found that there was a "significant and continuing change of circumstances that materially affect the welfare of the children" and thus addressed the best interests analysis. The superior court's specific findings about all relevant factors, including those enumerated in A.R.S. § 25-403(A), show the court considered the testimony by the parties' and the CAA, the CAA's report and all other evidence presented at the evidentiary hearing. The court's findings explicitly acknowledge T.D.'s desire to live with Father full-time. Furthermore, there was no evidence offered that "Mother directed [] Father to spank [the children] on numerous occasions." Instead, Father's only mention of spanking his children involved an incident in which Mother "called [him] . . . to handle" M.D., in which he stated that it was not until M.D. "got really rough" with Father that he decided he "was going to spank him." The evidence shows Mother then came in, broke them up and called the police on Father.

¶17        Father also argues the court erred by not interviewing T.D. By statute, a court "may interview the child in chambers to ascertain the child's wishes as to the child's custodian and as to parenting time," and may also "seek the advice of professional personnel," which the court here did at Father's request. *See* A.R.S § 25-405. Moreover, the court noted T.D.'s desire to live with Father full time, negating the need to interview T.D. on that point. Father has shown no error in the court not interviewing T.D.

¶18        Father argues the CAA report that the court relied on was faulty because the CAA "failed to pursue or fill in the facts about the situations which shed an entirely different light on [Mother's] comments" regarding Father. But Father admitted reading the CAA report before trial and never raised any issue about the report's accuracy in superior court. By failing to press this argument at trial, he has waived it on appeal. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007) (citing cases).

¶19        Father also argues the court "overlooked" decisions from other jurisdictions "that clearly find good cause to award decision-making and parenting time based [on] the specific request of the child." But those cases are neither binding nor persuasive. Under Arizona law, "the wishes of the child" are one of many factors the court considers in determining what is in the best interests of the child. *See* A.R.S. § 25-403(A). As noted above, the court here considered T.D.'s desire to live with Father full-time, but found, considering all the factors, it was in T.D.'s best interests for Mother to remain as the sole decision-making figure and for Father to have parenting time on alternating weekends.

¶20        Father repeatedly argues the superior court's decision is based on inaccurate and prejudicial facts, essentially asking the court to reweigh the evidence. This court, however, does not reweigh evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 282 ¶ 12 (App. 2002) (citing cases). On this record, Father has failed to show how the court erred in affirming Mother's sole decision-making authority and denying Father's request for modification of parenting time.

## IV.    Child Support.

¶21        "[S]upport may be modified or terminated only on a showing of changed circumstances that are substantial and continuing." A.R.S. § 25-327(A). The superior court found, and neither party disputes, that there had been "a substantial and continuing change of circumstances relevant to the calculation of child support." But the parties dispute various findings by the superior court regarding child support, including: (1) whether Father

was current with his court ordered $850 monthly child support payments, (2) how the court calculated income for purposes of adjusting child support payments and (3) how the court calculated back child support.

### A. The Superior Court Erred in Denying Mother's Petition for Non-Payment of Child Support and Finding Father Current in All His Child Support.

¶22 Mother argues the superior court "improperly credited Father with making all his child support payment[s]" and thus erred in not finding Father failed to pay his child support obligations. Mother alleges she presented evidence that Father (1) was not current with his child support obligations as of June 2022 and (2) did not make child support payments for May, August and October 2023. This court's review is limited to the record on appeal. *Nat'l Advert. Co. v. Ariz. Dep't. of Transp.*, 126 Ariz. 542, 543 (App. 1980) (citing cases).

¶23 Father owed Mother a total of $18,700 for child support for the period from September 1, 2020 through June 30, 2022. Citing "Exhibit 115," the court found Father made "$19,064 in payments to Mother" during that period, meaning he was current for that period. Exhibit 115, however, was a demonstrative exhibit that is not part of the record on appeal. The missing portions of the record are presumed to support the court's findings. *Cullison v. City of Peoria*, 120 Ariz. 165, 168 n.2 (1978) (citations omitted). Moreover, Mother has not otherwise shown how this finding was error. Accordingly, on the record presented, the court properly found Father had fully paid child support from September 1, 2020 through June 30, 2022.

¶24 Turning to Mother's arguments about child support payments in 2023, in denying her motion to reconsider, the superior court noted Mother's "pretrial statement specifically gave Father credit for 13 months of child support payments of $850 for the time period of October 1, 2022 to December of 2023." It is true that Mother, in describing disputed issues when discussing Father's arrearages in child support payments in the November 2023 joint pretrial statement, wrote Father "was paying child support in the amount of $850.00 per month" from October 2022 to present. Two pages later, however, in describing her petition to enforce, Mother said she filed the petition "due to Father's failure to pay court-ordered child support" as well as failing to reimburse medical expenses. Noting the $850 per month obligation in the decree, Mother then described that, over her objection, Father "unilaterally reduce[d] some of his monthly child support payments."

¶25 Given the relief Mother sought in her filings, including the joint pretrial statement in context, her statement about Father's payment history cannot work as a waiver of her claims for arrearages. *See Ray v. Mangum*, 163 Ariz. 329, 333 (1989) (holding that clear and compelling evidence is necessary to establish waiver of a claim for child support arrearages and stating "[w]here conflicting testimony exists and the parties' unspoken assumptions and intentions conflict, one party's belief cannot provide clear and convincing evidence of the parties agreement."); *cf. Schnepp v. State ex rel. Dep't of Econ. Sec.*, 183 Ariz. 24, 28 (App. 1995) ("If the evidence reflects a dispute between the parties over their unspoken assumptions and intentions, one party's belief that the other waived child support cannot provide clear and convincing evidence of waiver.").

¶26 The transcript at the evidentiary hearing shows Mother testified Father failed to make all his child support payments. The record also includes bank records Father provided, which Father testified "reflect the amounts that [he] paid to Mother" and corroborate he failed to make child support payments in May, August and October 2023. Mother also cites Exhibit 115 as supporting her argument. Even though Exhibit 115 is not part of the record, given Father's bank record evidence and testimony, the court erred in finding Father was current with his 2023 child support payments. Accordingly, the denial of Mother's motion to enforce is vacated in part and remanded for the court to address Father's alleged failure to pay required child support payments in May, August and October 2023.

## B. The Superior Court Properly Calculated the Parties' Incomes for Purposes of Child Support.

¶27 Father argues the court "incorrectly computed and awarded child support based on inaccurate, missing information." Father specifically challenges the court's decision to "round[] up Father's [child support income] to $10,888.00 without indicating where that figure came from." Child support income "is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures." *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994). Child support income may include salaries, wages, commissions, military pay and military disability benefits. A.R.S. § 25-320 app. ("Guidelines") § II.A.1.b.

¶28 In an Affidavit of Financial Information (AFI) provided a month before the November 2023 hearing, Father stated he earns $3,635.47 in monthly wages and $3,625 in disability income, for a total of $7,260.47. At the hearing, Father testified he receives an additional $3,625 in

retirement benefits. Collectively, these three sources show Father receives $10,885.47 each month. Moreover, the information Father provided with his AFI shows that he received $1,920 in "other income" in 2022. The superior court determined Father's gross monthly income for purposes of calculating child support was $10,888, $2.53 less than the three primary sources of income, but without accounting for the "other income" he disclosed. On this record, Father has shown no error in the court using $10,888 to calculate child support.

¶29 Father also argues the court mistakenly averaged Mother's income to $10,077 per month, when the average from the time periods submitted by Mother was $10,194. But Father uses the average of four periods summarized by Mother (some of which are two months long, while others are many months long), not an average by month. In fact, calculating the average by month (from June 2022 through October 2023), Mother's income averaged $10,061.59 a month during that period, less than what Father claims the court should have used and, in fact, less than what the court actually used. *See* Guidelines § II.A.1.c ("[F]luctuating income within a year [is] annualized to determine the average monthly Child Support Income."); *id.* § II.A.1.d. ("The court also has discretion to average fluctuating income over periods exceeding 1 year."). On this record, Father has shown no error.

### C. The Superior Court Erred in Calculating Back Child Support for 2023.

¶30 The superior court calculated back child support assuming Father was current on his $850 court ordered child support. Father claims the court's order on back child support was erroneous because it used incorrect amounts that do not match the $850 monthly child support obligation in the consent decree. As the court explained in its ruling, however, child support modifications are effective the first month following the date of service. *See* A.R.S. § 25-503(E). Because Father served Mother with his petition to modify in June 2022, the modifications became effective July 1, 2022 and after. The court explained its calculations, in detail, including how child support obligations changed during various time periods. And Father should have expected the child support to increase given that the $850 payment obligation in the decree was by agreement and was less than what the Guidelines directed. The court did not err in using amounts that differ from the previously stipulated $850 because Father himself requested the court modify the child support calculation starting July 1, 2022.

¶31        On the other hand, Mother argues on cross-appeal that the court erred in calculating Father's parenting days with M.D. for back child support because Father had not exercised parenting time with M.D. since January 2023. Noting Father was given credit for parenting days Mother did not exercise with W.D., Mother argues she should receive credit for the parenting time Father did not exercise with M.D.

¶32        Parenting time costs are determined by averaging the total number of parenting time days (the sum of the days with each child, divided by the number of children). *See* Guidelines § V(F). The total annual amount of parenting time may be based on the "parenting time indicated in a court order, a parenting plan, by the parents' expectation, or by historical practice." *Id.* at § V(C).

¶33        For October 2022 through December 2023, the court found the parenting time in the decree "had not changed, . . . and therefore the Court will credit Father with his [c]ourt ordered parenting time of 79 days." At the hearing, however, Mother provided a spreadsheet showing that, although Father exercised 71 days of parenting time with M.D. in 2022, just 20 of those days occurred in October, November and December. In 2023, at the time of the November 2023 hearing, Father had only exercised 7 days of parenting time with M.D. Father confirmed this during his testimony. As a result, from October 2022 through December 2023, Father had 27 days of parenting time with M.D., not 79. Mother's spreadsheet also showed that, although Father had exercised 89 days of parenting time with T.D. in 2022, just 33 of those days occurred in October, November and December. Father exercised 93 days of parenting time with T.D. in 2023.

¶34        Father exercised 77.5 days of parenting time with M.D. and T.D. combined in 2022, and thus, the superior court did not err in granting Father credit for 79 days of parenting time between October and December of 2022. *See* Guidelines § V(D) (establishing an adjustment of .10 for 70-84 parenting days). In 2023, however, Father only exercised a total of 50 days of parenting time with M.D. and T.D. by the end of November of 2023. The adjustment for 50-69 parenting days is .075, unlike the .10 the court used. *See* Guidelines § V(D). As a result, the court erred in crediting Father with 79 days of parenting time in 2023. Accordingly, the portion of the court's order regarding back child support in 2023 is vacated and remanded for entry of a new order using the .075 adjustment.

## V. The Superior Court Properly Granted Mother's Petition Seeking Unreimbursed Medical Expenses.

¶35        After trial, the superior court found Mother had incurred $6,237.28 in medical expenses and Father was responsible for half, or $3,118.65. Because Father already paid Mother $1,386 and overpaid $364 in child support, the court ordered Father to pay Mother $1,368.64 to reimburse her for his share. Father argues the court erred in calculating unpaid medical expenses because Mother did not supply receipts, and instead only supplied a spreadsheet that stated unsupported costs.[3] The superior court "is in the best position to evaluate credibility and accuracy, as well as draw inferences, weigh, and balance" the evidence presented at trial. *State v. Hoskins*, 199 Ariz. 127, 149 ¶ 97 (2000) (citations omitted). This court "examine[s] the record only to determine whether substantial evidence exists to support" the superior court's findings of fact. *In re Est. of Pouser*, 193 Ariz. 574, 579 ¶ 13 (1999) (citations omitted). This court defers to the superior court's findings of fact unless clearly erroneous. *Alvarado v. Thomson*, 240 Ariz. 12, 14 ¶ 11 (App. 2016).

¶36        Mother provided a chart detailing the medical expenses she had incurred for the children since August 2021, including dates and descriptions of each expense. She also included periodic emails she sent to Father starting in April 2022 where she allegedly attached receipts and updated charts regarding the medical expenses she had incurred. She testified at trial that she had provided Father the receipts of the expenses, but that he had failed to pay most of them. Father confirmed he had received receipts in the past and claimed he reviewed Mother's emails and had reimbursed Mother for receipts he had received. This provides substantial record evidence to support the court's finding that Father had failed to reimburse Mother for medical expenses and to calculate the amount he owed. Accordingly, Father has failed to show the court erred in addressing Mother's request for unpaid medical expenses.

---

[3] To the extent either party seeks to challenge the court's rulings regarding requests for contempt findings, including Mother's request that Father be held in contempt for non-payment of child support and unreimbursed medical expenses, this court lacks appellate jurisdiction to consider those rulings. *See, e.g., In re Marriage of Chapman*, 251 Ariz. 40, 42 ¶ 8 (App. 2021); *Danielson v. Evans*, 201 Ariz. 401, 411 ¶ 35 (App. 2001).

## VI.     The Superior Court Properly Awarded Mother Attorneys' Fees.

¶37        The superior court awarded Mother's attorneys' fees as to the petitions to enforce under A.R.S. § 25-324, which allows the court to "order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding" after "considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."

¶38        Both parties challenge the fee award. Father claims the court erred in finding he "ha[d] taken unreasonable positions throughout [the] litigation." Father alleges he filed his petition to modify in good faith "due to the extreme change [of] circumstance with his oldest [child]" and "did not unnecessarily delay any part of the case." But the court granted attorneys' fees based on Father's positions in response to Mother's petitions to enforce, and not for Father's positions in pressing his petition to modify.

¶39        In discussing Mother's petitions to enforce, the court found Father failed to pay medical expenses he was required to pay under the decree, "violated the terms of the [d]ecree in unilaterally declaring that he was entitled to the fall break" and was "in contempt for his actions in taking the child out of [s]tate during Mother's parenting time without her permission." To the extent this court has jurisdiction to review these findings, Father has not shown the superior court erred in making them or in granting Mother's request for fees.

¶40        Mother, on the other hand, alleges the court erred in limiting the fees awarded to those relating to her petitions to enforce because the court's finding of Father's unreasonableness applied broadly. But the superior court was more limited in its findings and has broad discretion to award attorneys' fees, with such awards being affirmed unless not supported by any reasonable basis. *Hale v. Amphitheater Sch. Dist. No. 10*, 192 Ariz. 111, 117 ¶ 20 (App. 1998). Although the superior court found "Father ha[d] taken unreasonable positions throughout [the] litigation," most of the findings of misconduct related to Mother's petitions to enforce. The only mention of Father's unreasonable actions in addressing his petition to modify is the finding that Father "claimed the children were failing school and that [] Mother unilaterally made decisions for [W.D.]" when there was no evidence presented to prove either claim. On this record, Mother has failed to show error in the court awarding her fees limited to the petitions to enforce.

**ATTORNEYS' FEES AND COSTS ON APPEAL**

¶41 Mother requests attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 25-324 and ARCAP 21(a). ARCAP 21 is not an independent basis for an award of fees, ARCAP 21(a)(2), and Mother does not specify whether she seeks fees under A.R.S. § 25-324(A) or (B). Construing her request as seeking fees under A.R.S. § 25-324(A) alone, having considered the financial positions of the parties and the reasonableness of their positions on appeal, in the exercise of its discretion, the court awards Mother a portion of her reasonable attorneys' fees and taxable costs incurred on appeal, contingent upon Mother's compliance with ARCAP 21.

**CONCLUSION**

¶42 The court affirms in part, reverses in part, and remands for further proceedings addressing Father's failure to make child support payments in May, August and October 2023 and calculating back child support in 2023 using the proper .075 adjustment for parenting time.

